1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **EASTERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| ANTHONY JOHNSON, | ) Case No. 1:12-cv-02044-LJO-SAB (PC) |
|            Plaintiff, | ) |
|     v. | ) **FINDINGS AND RECOMMENDATIONS** |
| | ) **REGARDING DEFENDANTS' MOTION FOR** |
| DR. SISODIA, et al., | ) **SUMMARY JUDGMENT** |
| | ) [ECF No. 50] |
|            Defendants. | ) |
| _____ | ) |

        Plaintiff Anthony Johnson is appearing pro se and in forma pauperis in this civil rights action
pursuant to 42 U.S.C. § 1983.

                                        **I.**

                                **BACKGROUND**

         This action is proceeding against Defendants Edgar Clark, Teresa Macias, Nareddy, and
Sisodia for deliberate indifference to a serious medical need.

        On August 14, 2015, Defendants filed a motion for summary judgment.  (ECF No. 50.)
Plaintiff filed an opposition on September 16, 2015, and Defendants filed a reply on September 23,
2015.  (ECF Nos. 57, 59.)  On October 13, 2015, Plaintiff filed a surreply.  (ECF No. 61.)
///
///
///

                                        1

## II.

## LEGAL STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings

2

because he is a pro se prisoner.  <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.**

**DISCUSSION**

**A.     Allegations Set Forth in Complaint**

Plaintiff filed several medical sick calls and inmate appeals regarding appropriate pain medication to treat the gunshot wound to his right knee and thigh.  Plaintiff was taken off Gabapentin pursuant to new rules and regulations relating to administration of certain drugs for pain management.

On December 7, 2000, Plaintiff filed an inmate appeal at Corcoran State Prison regarding the cancellation of Gabapentin to treat his pain.  At the first level response, Plaintiff was approved for surgery consult to have the bullet removed.  Plaintiff appealed to the second level of review. Defendants Edgar Clark and Teresa Macias, denied Plaintiff's appeal finding no new medical issues, Plaintiff was receiving Ibuprofen for pain, and was scheduled for surgery consultation.  It was further noted that Gabapentin was no longer authorized to be prescribed as a pain medication.

On February 22, 2011, Plaintiff filed a medical complaint requesting x-rays to be taken to prove that Plaintiff has a bullet in his right thigh which was causing him pain.  The appeal was denied at the first level and partially granted at the second level of review, noting that Plaintiff was pending diagnostic study evaluation.

Plaintiff underwent surgery on November 30, 2011, on his right knee.  Plaintiff was diagnosed by Dr. Young Paik of having chronic synovitis of the right knee and status post gunshot wound to the right thigh.  When Plaintiff returned from the outside hospital, he was taken to the Corcoran Prison Hospital and provided pain medication.

The morning following Plaintiff's surgery, Plaintiff informed the nurse that the surgeon indicated he was to be provided Vicodin tables for 4 to 6 weeks and Motrin 600 mg for his pain. Plaintiff was placed on the doctor's line to see Defendant Dr. Nareddy.  On December 6, 2011, Plaintiff informed Dr. Nareddy of his surgery and his need for Vicodin and Motrin as indicated by the surgeon.  Dr. Nareddy failed to do anything or follow the orders from Dr. Young Paik.

///

3

On December 27, 2011, Plaintiff was seen by Dr. Sisodia regarding an inmate grievance he filed against Dr. Nareddy.  Dr. Sisodia admitted that Plaintiff was to be given Vicodin based on the surgeon's orders; however, Dr. Sisodia did not follow the order.

Plaintiff was seen by Dr. Sisodia again on February 2, 2012, and was prescribed Acetaminophen with Codeine and Ibuprofen, along with oxcarbazepine, but he still suffered pain.

On March 28, 2012, Plaintiff was seen again by Dr. Sisodia but it seemed as if Dr. Sisodia could not understand Plaintiff's problems.

On April 16, 2012, Plaintiff filed an inmate appeal to see a pain specialist to be provided adequate pain medication.  The appeal was partially granted by Dr. Nareddy.  Plaintiff filed the appeal to the third and final level of review.

On August 26, 2012, Plaintiff filed a CDCR Form 22 to Defendant Teresa Macias, but Plaintiff never received a response.

On August 27, 2012, Plaintiff filed a CDCR Form 22 to Defendant Edgar Clark, but Plaintiff never received a response.

**B.      Defendants' Statement of Undisputed Facts**

1.      Plaintiff was at all relevant times an inmate at California State Prison, Corcoran and housed in the Secure Housing Unit.

2.      Defendants Dr. Nareddy and Physician's Assistant Sisodia were employed with the California Department of Corrections and Rehabilitation (CDCR) in the medical unit at California State Prison, Corcoran.

3.      Defendant E. Clark was employed by the CDCR as the Chief Medical Officer at California State Prison, Corcoran.

4.      Defendant T. Macias was employed by the CDCR as the  Chief Executive Officer at California State Prison, Corcoran.

5.      Plaintiff underwent a knee surgery at Mercy Hospital on November 30, 2011 for chronic knee pain and a possible torn meniscus.

6.      Plaintiff returned from Mercy Hospital around 7:30 p.m. on November 30, 2011, after the right leg surgery.  Plaintiff was noted to be in stable condition and arrived via

4

wheelchair.  Pain medication was ordered and orders were provided for crutches and a ground floor and lower bunk bed.  Plaintiff was discharged to custody at around 8:47 p.m.

7.     Dr. Nareddy saw Plaintiff the day after his surgery, on December 1, 2011.  Plaintiff was noted to be getting relatively better after his arthroscopy with joint debridement and partial meniscectomy.  Plaintiff was wearing an Ace wrap and complained of pain.  Plaintiff was able to walk without his crutches, despite having been issued crutches.  Based on Dr. Nareddy's assessment at that time, Dr. Nareddy increased Plaintiff's Trileptal prescription and prescribed him Tylenol No. 3 for pain and Reglan for nausea and vomiting.

8.     Plaintiff subsequently complained of the pain via Health Care Services Request Form on December 3, 2011.

9.     Plaintiff was seen again on December 6, 2011 by a registered nurse.  Plaintiff was noted to have a steady gait and he was ambulatory.  He was referred for a follow-up with a physician on December 9, 2011.

10.     Dr. Nareddy saw Plaintiff again on December 9, 2011.  Plaintiff was then scheduled to have the outside physician remove the sutures in three days with a post-operative follow-up.  He was brought in via wheelchair, despite having been partial-weight bearing on crutches.  Plaintiff reported that his pain continues, but is better.  Plaintiff was then able to ambulate.  Dr. Nareddy extended Plaintiff's Tylenol No. 3 for thirty days.

11.     On December 11, 2011, two days later, Plaintiff submitted another Health Care Services Request Form.  Plaintiff complained that his right knee was in pain and swelling.

12.     Plaintiff was seen by his operating surgeon on December 12, 2011.

13.     On December 27, 2011, Plaintiff saw Physician's Assistant (Sisodia).  Plaintiff's right knee was not swollen and Plaintiff was not cooperative.  Plaintiff was referred for physical therapy.

14.     On January 12, 2012, Plaintiff complained via Health Care Services Request Form that his pain medicine had run out.  Plaintiff requested renewal of his Tylenol No. 3 prescription.

15.     Plaintiff's next appointment was on February 2, 2012 with the Physician's Assistant Sisodia.  Plaintiff continued to complain of pain and was again provided Tylenol No. 3.

16.     Plaintiff was then seen by the Physician's Assistant Sisodia on March 11, 2012.  Plaintiff continued to complain of pain in the right knee.  No muscle atrophy was noted.

17.     Dr. Nareddy next saw Plaintiff on May 17, 2012.  Plaintiff was assessed to have chronic right knee pain.  Plaintiff requested Tylenol No. 3, but it was not then clinically indicated as he was about six months post-surgery.  Plaintiff was noted to have normal right knee range of motion and he was able to walk on his tiptoes and heels.  He had some numbness around the knee.  Dr. Nareddy ordered Plaintiff to follow-up in 90 to 120 days with the Chronic Care Program.

18.     After his operation, Plaintiff was provided Tylenol No. 3 and Trileptal (oxcarbazepine) for pain.

19.     Vicodin and Tylenol No. 3 are both opioids and they are considered interchangeable for patients in Plaintiff's position.  Tylenol No. 3 is a clinically reasonable substitute for Vicodin.

**C.     Plaintiff's Statement of Undisputed Facts**

1.     Plaintiff is an inmate in the custody of the CDCR.

2.     Plaintiff was housed at California State Prison, Corcoran in the security housing unit (SHU) at the time of the alleged inadequate medical care to Plaintiff's serious medical conditions.

3.     Since the year 2008, Plaintiff filed medical sick call slips (CDCR 7362) forms for a sufficient pain medication for the level of pain Plaintiff is in and discomfort and not being able to sleep at night due to gunshot wound to the right outer thigh and right knee.

6

4.      Plaintiff filed a 602 dated December 7, 2010, at Corcoran State Prison about being taken off a pain medication that help Plaintiff for his severe gunshot wound in which the bullet is still in Plaintiff's right thigh which cause Plaintiff's right thigh to lock up and Plaintiff is unable to walk or conduct his daily living activities.

5.      At the first level of the 602 dated December 7, 2010, Plaintiff was approved for surgery consult to have the bullet removed which has not been done.  Plaintiff was dissatisfied with the first level response and went to the second level review due to the fact that Plaintiff has nerve damage to his right thigh from the gunshot wound and no pain medication was given.

6.      Defendant Edgar Clark, Chief Medical Officer (CMO) and Defendant Teresa Macias, Chief Executive Officer (CEO) responded and sign/approved the 602 second level response dated March 1, 2011, Log Number COR-09-10-15742 which stated: There are no new medical issues presented in your second level appeal.  We have revisited the concerns and requests of your first level issue and found no new information to alter our findings.  You are currently receiving Ibuprofen for pain.  You have been approved for surgery consult to have the bullet removed which seems to be causing you discomfort.  Defendants Edgar Clark and Teresa Macias further stated: There is no need for another x-ray because your right thigh has already been determined to have a "metallic foreign body" in it.  As for the Gabapentin, the California prison health care services (CPHCS) determines which medications can be used/prescribed to California inmates and for what reasons.  Gabapentin is no longer authorized to be prescribed as a pain medication therefore your request to have it reinstated is denied.

7.      Plaintiff filed a 602 medical complaint dated February 22, 2011, requesting an x-ray to prove that Plaintiff has a bullet in his right thigh and to request removal of the bullet or to be provided something for his pain or referral to a pain specialist.

8.      The first level response of the 602 Log Number COR-09-10-10605 by L. Karan, Medical Doctor stated that L. Karan indicated you will be sent for an x-ray of your femur.  A referral for a CT scan of your right thigh has been generated which is subject

7

1      to CMO approval.  A referral regarding a pain specialist has been generated which is

2      subject to CMO approval.  Your request for Gabapentin is denied as you do not meet

3      CDCR criteria.

4    9.     Plaintiff was dissatisfied with the first level response stating still suffered pain and was

5           not provided proper pain medication.  Plaintiff contended that if he did not meet CDCR

6           criteria of Gabapentin he was nonetheless not provided adequate treatment for his pain

7           because Ibuprofen and Tallenall did not work.

8    10.    The second level response was partially granted, Log Number COR-09-11-10605,

9           signed by Defendant Teresa Macias stating there are no new medical issues presented

10          in your second level appeal.  We have revisited the concerns and requests for your first

11          level issue and found no new information to alter our findings.  You were evaluated by

12          ortho on March 11, 2011.  The x-ray has been done.  Therefore, your request for an x-

13          ray is granted.  Also within the responses it stated your request for the bullet to be

14          removed is partially granted pending the diagnostic study and ortho evaluation of said

15          diagnostic study.

16   11.    Dr. Young Paik, at Colonial Medical Group in Bakersfield, conducted an initial

17          orthopedic evaluation on March 11, 2011, under section clinical impression stated 1)

18          status post gunshot, right thigh; 2) chronic right thigh pain; 3) radicular pain in the right

19          lower extremity.

20   12.    On September 12, 2011, Plaintiff returned to see Dr. Young Paik, and the examination

21          revealed the gunshot wound is healing very well.  There is tenderness in the medical

22          aspect of the proximal thigh area.  There is tenderness in the joint line.  There is

23          popping and grinding during flexion and extension.

24   13.    On November 30, 2011, surgery was performed on his right knee because it was

25          swollen and possible torn meniscus.  Plaintiff was diagnosed by Dr. Young Paik with

26          chronic synovitis of right knee.

27   14.    Plaintiff was seen by Registered Nurse (RN) Dava seven days after surgery on

28          November 30, 2011, and Plaintiff informed Dava he was ordered to be provided

8

1    Vicodin following the surgery.  However, Dava indicated only doctors could prescribe

2    Vicodin and he was placed on the doctor's line that same day to see Defendant Doctor

3    Nareddy.

4    15.    On December 6, 2011, Plaintiff informed Dr. Nareddy that of the surgery on November

5    30, 2011, and his need for Vicodin as ordered by surgeon Dr. Paik.  Plaintiff was not

6    provided Vicodin.

7    16.    On December 12, 2011, Plaintiff was again evaluated by Dr. Paik, who removed the

8    stitches and applied sterile medicated dressing.  It was noted by Dr. Paik that he would

9    provide intensive strengthening for the quadriceps and hamstring muscle groups.  He

10   will increase his activity, and return to the office for follow up evaluation in one month.

11   17.    After examination by Dr. Nareddy, Plaintiff filed a 602 grievance stating he was in

12   need of sufficient medication for his pain.  On December 27, 2011, Plaintiff was seen

13   by Defendant Physician's Assistant (PA) Sisodia regarding the 602 grievance.  Plaintiff

14   explained that he had knee surgery on November 30, 2011, and was in need of adequate

15   pain medication.

16   18.    Defendant Sisodia admitted that Plaintiff was supposed to be given Vicodin based on

17   the surgeon's orders.

18   19.    Plaintiff filed an inmate appeal on January 16, 2012, against Defendant Sisodia

19   claiming the surgeon informed Plaintiff he would be in pain after the stitches were

20   removed.

21   20.    On February 12, 2012, Plaintiff was seen by Defendant Sisodia and prescribed

22   acetaminophen with codeine, ibuprofen, and oxcarbazepine, and Plaintiff claims to still

23   suffer from pain.

24   21.    On March 28, 2012, Plaintiff was seen by Defendant Sisodia and Plaintiff explained he

25   was in pain in right leg and knee.  Plaintiff informed Sisodia he was in need of adequate

26   pain medication, but Sisodia failed to provide adequate treatment.

27

28

9

22.   On April 16, 2012, Plaintiff filed an inmate appeal, Log Number COR HC 12050156 requesting to see a pain specialist and to be provided proper pain medication.  Plaintiff was seen by Dr. Nareddy at the first level of review.

23.   Plaintiff's appeal, Log Number COR HC 12050156 was partially granted at the first level of review by Dr. Nareddy; however, Dr. Nareddy never addressed Plaintiff's complaint issues.

24.   Plaintiff's submitted appeal, Log Number COR HC 12050156 to the third level of review based on his claim he was not receiving adequate pain medication.

25.   On August 26, 2012, Plaintiff filed a CDCR Form 22 to Defendant Teresa Macias stating Plaintiff was in pain, despite surgery in November 2011, and the pain medication he was receiving was inadequate.

26.   Defendant Teresa Macias never responded to Plaintiff's request.

27.   On August 27, 2012, Plaintiff sent a CDCR Form 22 to Defendant Edgar Clark stating that on June 14, 2012, Plaintiff was examined by Dr. Williams through telemedicine and within his report it was noted that Plaintiff has sensation damage to his right thigh where the gunshot wound is present.  Dr. Williams also noted that the nerve is sensory only and does not provide power nor does it affect balance.  Plaintiff should just be careful not to burn the area if side lying on the right side.

28.   Defendant Edgar Clark never responded to Plaintiff's grievance.

29.   Plaintiff has submitted four different x-ray examinations from April 6, 2002 through April 28, 2011, which show a bullet in the soft tissues posterior to the mid femur.

**D.    Legal Standard**

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v. Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (quotation marks omitted).  While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the

///

10

wanton and unnecessary infliction of pain.  <u>Morgan</u>, 465 F.3d at 1045 (citing <u>Rhodes</u>, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, <u>Morgan</u>, 465 F.3d at 1045 (quotation marks omitted).  To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety.  <u>See, e.g.</u>, <u>Farmer</u>, 511 U.S. at 847; <u>Thomas v. Ponder</u>, 611 F.3d 1144, 1151-52 (9th Cir. 2010); <u>Foster v. Runnels</u>, 554 F.3d 807, 812-14 (9th Cir. 2009); <u>Morgan</u>, 465 F.3d at 1045; <u>Johnson</u>, 217 F.3d at 731; <u>Frost v. Agnos</u>, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  <u>Wilhelm v. Rotman</u>, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006)).  Defendants do not argue that Plaintiff's right knee and leg condition did not present an objectively serious medical need and therefore, the Court's focus is limited to whether Defendants acted with deliberate indifference to Plaintiff's knee and leg condition, specifically Plaintiff's complaint that the pain medication prescribed was inadequate.

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  <u>Wilhelm</u>, 680 F.3d at 1122 (citing <u>Jett</u>, 439 F.3d at 1096).  The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  <u>Snow v. McDaniel</u>, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); <u>Wilhelm</u>, 680 F.3d at 1122.

**E.     Findings**

Plaintiff's claim against Defendants arises out of Plaintiff's disagreement with the course of treatment prescribed by Defendants during surgery and prior to and after his knee surgery to address Plaintiff's complaint of continued knee pain.  A mere difference of opinion between Plaintiff and Defendants regarding medical treatment does not give rise to a claim under section 1983.  <u>Snow</u>, 681

F.3d at 987-88; <u>Wilhelm</u>, 680 F.3d at 1122-23; <u>Franklin v. Oregon</u>, 662 F.2d 1337, 1344 (9th Cir. 1981).  Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health.  <u>Jackson v. McIntosh</u>, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); <u>accord Snow</u>, 681 F.3d at 987-88.

Plaintiff suffers from a gunshot wound to his right thigh and pain in his knee.  It is undisputed that on November 30, 2011, Plaintiff underwent knee surgery at Mercy Hospital for chronic knee pain and a possible torn meniscus.  Defendants submit evidence and it is undisputed that Plaintiff was evaluated and treated on the following dates:

- November 30, 2011
- December 1, 2011
- December 6, 2011
- December 9, 2011
- December 12, 2011
- December 27, 2011
- February 2, 2012
- March 11, 2012
- May 17, 2012

At each examination, Plaintiff was evaluated by medical professionals who documented Plaintiff's recovery and condition.  (Doc. No. 67, Dr. Nareddy Decl. ¶¶ 6-16.)

On November 30, 2011, Plaintiff underwent arthroscopic surgery at Mercy Hospital in Bakersfield, California for chronic knee pain and a possible torn meniscus.  Immediately following Plaintiff's return to CDCR after surgery, Plaintiff was provided crutches and a ground floor and lower bunk bed.  It was noted that the day after surgery, Plaintiff was able to walk without crutches.  (<u>Id.</u> at ¶¶ 5-6, Ex. 1.)

On December 1, 2011, the day after his surgery, Plaintiff was examined by Dr. Nareddy.   Dr. Nareddy noted that Plaintiff was getting "relatively better" after his surgery and was wearing an Ace wrap and complained of pain.  Plaintiff was able to walk without crutches, despite having been issued

12

the crutches.  In response to Plaintiff's complaints, Dr. Nareddy increased Plaintiff's Trileptal prescription and prescribed Tylenol No. 3 for pain and Reglan for nausea and vomiting.  (Doc. No. 67, Dr. Nareddy Decl. ¶ 6 & Ex. 2.)

Plaintiff subsequently complained of pain via health care services request form on December 3, 2011.  (Doc. No. 67, Dr. Nareddy Decl. ¶ 7, Ex. 3.)  In response, Plaintiff was examined by a registered nurse on December 6, 2011, and it was noted that he had a steady gait and was ambulatory. (Id.)  It was also noted that Plaintiff has Tylenol 3.  Plaintiff was referred for a follow-up with a physician on December 9, 2011.  (Id., Ex. 4.)

Dr. Nareddy examined Plaintiff on December 9, 2011, and Plaintiff complained of pain but it was "much better."  (Dr. Nareddy Decl. ¶ 9, Ex. 5)  Plaintiff was able to ambulate and prescription for Tylenol No. 3 was continued for an additional thirty days.  (Id.)

On December 11, 2011, a mere two days later, Plaintiff submitted another health care services request form and complained of right knee pain and swelling.  (Id. ¶ 10, Ex. 6.)

Plaintiff was examined by operating surgeon Dr. Young Paik on December 12, 2011.  (Id. ¶ 11, Ex. 7.)

On December 27, 2011, approximately a month following surgery, Plaintiff was examined by Defendant PA Sisodia and it was noted that Plaintiff's knee was not swollen and Plaintiff was referred to physical therapy.  (Id. ¶ 12, Ex. 8.)

On January 12, 2012, Plaintiff complained via health care services request form that his pain medicine had ran out.  Plaintiff requested renewal of his Tylenol No. 3 prescription.  (Id. ¶ 13, Ex. 9.)

Plaintiff's next appointment was on February 2, 2012, with Defendant PA Sisodia.  (Id. ¶ 14, Ex. 10.)  Plaintiff continued to complain of pain and was provided Tylenol No. 3.  (Id.)

Plaintiff was subsequently seen by PA Sisodia on March 11, 2012.  (Id. ¶ 15, Ex. 11.)  Plaintiff continued to complain of pain.  However, no muscle atrophy was noted.  (Id.)

Plaintiff was next seen by Dr. Nareddy on May 17, 2012.  (Id. ¶ 16, Ex. 12.)  Plaintiff was assessed to have  chronic knee pain.  Plaintiff requested Tylenol No. 3, but Dr. Nareddy determined it was not then clinically indicated as he was about six months post-surgery.  It was noted that Plaintiff had normal right knee range of motion and was able to walk on his tiptoes and heels.  (Id.)

Although outside surgeon Dr. Young Paik may have recommended Vicodin following Plaintiff's surgery, it is undisputed that Plaintiff was provided the functional equivalent of Tylenol 3 to address his pain following the surgery.  (Dr. Nareddy Decl. ¶ 19 & Ex. 15.)  Dr. Nareddy declares that both Vicodin and Tylenol No. 3 are opioids and they are considered interchangeable for patients in Plaintiff's position.  Tylenol No. 3 is a clinically reasonable substitute for Vicodin.  (Id.)  Indeed, Dr. Nareddy provides that the medical literature and the community standard is that Tylenol No. 3 and Vicodin are interchangeable for patients in Plaintiff's position, i.e. recovering from a microscopic, minor knee surgery.  (Id.)   "This was not an open knee, major surgery, like a knee replacement."  (Id.)

Based on a review of Plaintiff's medical reconciliation—active medications forms for Plaintiff dated November 30, 2011, December 8, 2011, December 23, 2011, January 18, 2012, January 31, 2012, February 12, 2012, February 14, 2012, March 21, 2012, March 28, 2012, May 17, 2012, June 8, 2012, and June 14, 2012, Plaintiff was provided Tylenol No. 3 and Trileptal (oxcarbazepine) for pain after the operation.  (Dr. Nareddy Decl. Ex. 13.)  Based on a review of Plaintiff's medical records, Dr. Nareddy provided his medical opinion that "Tylenol No. 3 in the amount prescribed here should have been sufficient to control Plaintiff's pain.  In an abundance of caution, Trileptal was also provided to the Plaintiff.  Given Plaintiff's overall clinical picture and to a reasonable medical probability, Trileptal in the amount prescribed should have also been sufficient to control his pain.  Trileptal is efficacious in the treatment of neuropathic pain.  This is well accepted in the medical field and supported by studies by the National Health Institute and Mayo Clinic."  (Id. Ex. 14.)  Plaintiff has failed to demonstrate anything beyond his mere disagreement with the treatment provided.

Plaintiff's desire for a stronger pain medication and his belief that he should have been prescribed some other pain medication, do not suffice to create a triable issue of fact regarding whether Defendants' failure to prescribe a stronger medication rose to the level of deliberate indifference.  See Jett v. Penner, 439 F.3d at 1096 (plaintiff must demonstrate "a purposeful act or failure to respond to a prisoner's pain or possible medical need.") (citing Estelle, 429 U.S. at 104); see also Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) ("[A] mere 'difference of medical opinion" as to the prescription drug plan is not sufficient to invoke the Eighth Amendment.)

1    Any claim by Plaintiff that the bullet should have been removed from his right thigh area is

2  negated by the treatment and recommendation note by the operating surgeon Dr. Young Paik, who

3  recommended that the bullet not be removed.  (Doc. No. 57, Opp'n Ex. G.)  It was specifically noted

4  by Dr. Young Paik that "regarding the metallic fragment, there is no special treatment required.  If we

5  try to do exploration of the metallic fragment, he will develop scar tissues and there will be more

6  damage in the soft tissues at the present time."  (Id.)

7    With regard to Plaintiff's claim that his prescription for Gabapentin was improperly

8  discontinued, it was explained in response to Plaintiff's inmate grievance that the California Prison

9  Health Care Services determined that Gabapentin is no longer authorized to be prescribed as a pain

10 medication and his request for reinstatement of such medication was denied.  (Doc. No. 57, Opp'n, Ex.

11 B.)  Plaintiff has failed to submit any medical evidence to demonstrate that the decision to cancel this

12 prescription was "medically unacceptable under the circumstances" or that any particular Defendant

13 acted with a "conscious disregard of an excessive risk to Plaintiff's health."  Jackson v. Duncan, 90

14 F.3d 330, 332 (9th Cir. 1996).

15   Plaintiff cannot attempt to establish liability based on a theory that he was denied referral to a

16 pain specialist, as such claim is unfounded.  First, as established by Dr. Nareddy, according to all

17 medical professionals, including Defendants, Plaintiff's pain was treated with appropriate medication

18 and they could not have been deliberately indifferent for failing to refer Plaintiff to a pain specialist.

19 Furthermore, there is no evidence that a specialist would have recommended any different treatment or

20 therapies than what was provided by Defendants.  Accordingly, Plaintiff's claim fails for lack of

21 causation.  Lemire v. Cal. Dep't of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) ("plaintiff's

22 alleging deliberate indifference must also demonstrate that the defendants' actions were both an actual

23 and proximate cause of their injuries.").  Any disagreement Plaintiff may have had with any medical

24 decisions provided by Defendants simply does not give rise to a claim for deliberate indifference

25 under the Eighth Amendment, and based on the evaluations and treatment provided by Defendants

26 there is no showing that any of the named Defendants chose a course of treatment in conscious

27 disregard of an excessive risk to Plaintiff's health.

28

1    Furthermore, although Plaintiff contends that Defendants Teresa Macias and Edgar Clark

2    failed to respond to his inmate appeals in 2012, Plaintiff fails to establish deliberate indifference.

3    First, the prison grievance procedure does not confer any substantive rights upon inmates and actions

4    in reviewing appeals cannot serve as a basis for liability under section 1983.  Buckley v. Barlow, 997

5    F.2d 494, 495 (8th Cir. 1992).  Second, and more importantly, Plaintiff has failed to establish that any

6    of the Defendants were deliberately indifferent to a serious medical need.  Rather, as evidenced above,

7    Plaintiff was provided adequate treatment prior to and following his surgery in November 2011, and

8    Plaintiff's mere disagreement with the treatment and medication provided does not support a claim for

9    deliberate indifference by any of the Defendants.[1]  Accordingly, Defendants' motion for summary

10   judgment should be granted.

## IV.

## RECOMMENDATIONS

       Based on the foregoing, it is HEREBY RECOMMENDED that:

       1.     Defendants' motion for summary judgment be GRANTED; and

       2.     Judgment should be entered in favor of Defendants.

       These Findings and Recommendations will be submitted to the United States District Judge

assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after

being served with these Findings and Recommendations, the parties may file written objections with

the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and

Recommendations."  The parties are advised that failure to file objections within the specified time

//

//

//

//

//

---

[1]  Because the Court has found that Defendants are entitled to summary judgment on Plaintiff's claim for deliberate indifference in violation of the Eighth Amendment, the Court need not and will not address Defendants' alternative argument for entitled to qualified immunity.

16

may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 13, 2016**

UNITED STATES MAGISTRATE JUDGE